<pre>
</pre>

Timothy Reed, Esq.
Law Office of Timothy Reed
1671 The Alameda, Suite 200
San Jose, CA 95126
669-444-1148
timothyreedesq@gmail.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANGEL TOTTON, as guardians of minor child, K.T, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SACRAMENTO, OFFICER LAWRENCE & UNKNOWN OFFICERS, <br><br> Defendants. | Count I - 42 USC 1983 - Monell <br> Count II - 42 USC 1983 <br> Count III - 42 USC 1983 <br> Count IV – False Imprisonment <br> Count V – Intentional Infliction of Emotional Distress <br> Count VI - Indemnification <br><br> **JURY DEMANDED** |

## COMPLAINT

NOW COMES Plaintiff, ANGEL TOTTON, as guardian of minor child K.T., by and through her attorneys, THE WALTERS LAW FIRM, hereby submit this Complaint against Defendants, City of SACRAMENTO, Officer LAWRENCE and UNKNOWN OFFICERS seeking monetary and injunctive relief. In support thereof, Plaintiff states and alleges the following:

### Introduction

1.     This is a civil action seeking damages against Defendants for committing acts under color of law, and depriving Plaintiff of rights secured by the Constitution and laws of the United States. In sum, Defendants illegally detained the minor Plaintiff without justification. Plaintiffs have been harmed significantly by the unconstitutional acts of Defendants.

### Jurisdiction and Venue

2. The jurisdiction of this court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983, the Judicial Code, 28 U.S.C. §§ 1331 and 1343 (a); the Constitution of the United States. Venue is proper under 28 U.S.C. §1391(b). the events purported herein all occurred in the Eastern District of California. All events pertinent to this case arose in the Eastern District of California.

**The Parties**

3. At all times relevant to his involvement in this case, Plaintiff K.T. was a fourteen-year United States citizen who currently resides in Sacramento, California.

4. At all times relevant to their involvement in this case, Defendant Officer Lawrence ("LAWRENCE") and Defendants Unknown Officers ("UNKNOWN OFFICERS") (collectively "OFFICERS") were present or former employees of the City of Sacramento. At all times relevant to the complained of incident, Defendants acted within the scope of their employment and under the color of law.

5. The City of Sacramento (hereinafter and hereafter "CITY") is a municipal corporation organized under the laws of California.

6. Upon information and belief, all Defendants are residents of California.

**Background Facts**

7. On the evening of October 10, 2020, K.T. was exiting a Delta Shores Cinema with his two teenage cousins.

8. After K.T. and his cousins exited the building, they began to walk toward the In-and-Out Burger within the plaza to meet the Lyft driver they had called.

9. As they walked, the Defendant LAWRENCE pulled up and turned on his siren. He told the group that K.T. was in that they had to turn left to get out of Delta Shores. K.T. responded that was the way that they were going.

10. To that, Defendant LAWRENCE exited his car, pulled out his taser, and handcuffed K.T.

11. Defendant LAWRENCE then illegally searched K.T. and detained him in the back of his squad car.

12. As Defendant LAWRENCE searched K.T., he commented that "even fourteen-year-olds have guns."

13. When K.T.'s cousins asked why K.T. was being detained, the Defendant Officers did not provide an answer, but threatened to put them in cuffs too.

14. At some point during this illegal search and detention, another Sacramento squad car pulled up with more Sacramento police officers inside.

15. Defendant LAWRENCE and his partner drove the car to another area, with K.T. in the back of the car.

16. Defendant LAWRENCE laughed and commented to his partner that K.T. was their first victim of the night and then told K.T. that he was "the problem."

17. Eventually, Defendant LAWRENCE asked K.T. for his name and date of birth.

18. While K.T. sat in the back of the car, he saw the other squad car pull past and shout "Bye Kam."

19. Additionally, K.T. heard Defendant LAWRENCE and his partner laughing as they stood outside of the car saying, "Wanna go get another one? I have a second pair of handcuffs."

20. At this point, K.T. had been illegally detained in the back of the car for about 30 minutes.

21. During his ongoing detention, K.T.'s phone rang and the Defendant Officers wouldn't allow him to answer it.

22. K.T. said that it might be his mom and then asked if he could call his dad. The Defendant Officers asked which parent would be angrier and that's the one they would call.

23. The Defendant Officers called K.T.'s mother and walked away while talking to her.

24. The Defendant Officers returned with the phone on speaker. K.T.'s mother told K.T. that the officers would be letting him go. The Defendant Officers then said to K.T.'s mom, "it's our fault."

25. The Defendant officers then drove K.T. back to the drive thru where he was initially heading.

26. After being wrongfully detained in the back of a squad car for approximately forty minutes, the Defendant Officers let K.T. out of the vehicle.

27. K.T. began to walk across the street when the Defendant Officers called for him to come back. K.T. complied and they gave him a Notice of Trespassing violation.

## Causes of Action

### Count I - MONELL CLAIM - Custom of Excessive Force
### Against Defendant City

28. Plaintiffs hereby reallege and incorporate all preceding paragraphs of this complaint as if fully set forth herein.

29. Prior to and on October 10, 2020, Defendant CITY developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons within the city of Sacramento, which caused the aforementioned violations of the K.T.'s rights. The actions of Defendants as alleged above were done pursuant to one or more *de facto* policies, practices, and customs of the Defendant CITY.

30. Defendant CITY maintains a *de facto* policy and unofficial custom whereby their police officers are permitted to exercise unreasonable searches and seizures against those with whom they come into contact. Additionally, in response to these ongoing

constitutional violations, the Defendant CITY and its policy makers have made no significant corrective action. Defendant CITY's failure to take any meaningful action, despite the documented and ubiquitous constitutional violations has resulted in police officers' use of unreasonable force with impunity. This custom proximately caused Defendant OFFICERS' excessive and unnecessary use of force against K.T.

31. Proof of this custom can be be see with:

   a. The California Department of Justice's "Report & Recommendations" issued on January 29, 2019. See <https://oag.ca.gov/system/files/attachments/press-docs/spd-report.pdf>. In its report, the "DOJ identified deficiencies ranging from outdated Use of Force policies, lack of standardization and rigor in use of force internal investigations and training, and lack of systemic information collection and accountability measures, particularly with regard to the personnel complaint process." Additionally, the DOJ made recommendations for the Defendant CITY's police department, including but not limited to policies which "more clearly define and describe when force is, and is not, authorized," "affirm the importance of proportionality (the concept that the nature or severity of the force that an officer uses should be consistent with the nature of the threat that a subject poses)," and "prohibit certain problematic uses of force, including needlessly high-risk force."

   b. Various allegations of excessive use of force, over the last few years, committed by Defendant CITY's police department, many of which have been vindicated by settlement. For example:

     i. *Cain v. City of Sacramento*, Case No. 2:17-cv-00848-JAM-DB (E.D. Cal.) (Alleging that on April 10, 2017, a police officer grabbed, tackled, and punched a man for jaywalking. The resulting lawsuit was settled.)

    ii.    *Clark v. City of Sacramento*, Case No. 2:19-cv-00171-JAM-EFB (E.D. Cal.) (Alleging that on March 18, 2018, two police officers shot a 22-year old, unarmed man to death, while he hid in his grandmother's backyard. The resulting lawsuit was partially settled.)

    iii.    *Halcomb v. City of Sacramento*, Case No. 2:14-cv-02796-MCE-DB (E.D. Cal.) (Alleging that on August 8, 2014, three police officers illegally entered a residence, lied about the existence of an arrest warrant, and used excessive and unreasonable force against the resident. The resulting lawsuit was settled.)

    iv.    *Hernandez v. City of Sacramento*, Case No. 2:17-cv-02311-JAM-DB (E.D. Cal.) (Alleging that on March 6, 2017, three police officers chased, tased, beat, and restrained a man, who had been loitering in front of a convenience store, until he asphyxiated. The beating put the man in a coma and left him with the mental capacity of a toddler. The resulting lawsuit was settled).

    v.    *Jones v City of Sacramento, et al.*, Case No. 2:20-cv-900 (E.D. Cal.) (Alleging that on May 6, 2019, Sacramento Police Officers illegally entered a woman's home, lied about the entry being for a probation check, and proceeded to unnecessarily shove her into an appliance and handcuff her, in front of her minor children. The case is still pending.)

    vi.    *Mann v. City of Sacramento*, Case No. 2:16-cv-01847-WBS-DB (E.D. Cal.) (Alleging that on July 11, 2016, two police officers attempted to run-over a mentally ill man with their patrol vehicle. After failing to run him over, the officers exited their vehicle, pursued, cornered, and shot the man to death. The resulting lawsuit was settled.)

    vii.    *McClellan v City of Sacramento*, Case No. 2:20-cv-00560 (E.D. Cal.) (Alleging that March 20, 2018, a 16-year old boy was recuperating from a gunshot at UC Davis Hospital, when Sacramento Police Officers entered his room and demanded his cell phone without a warrant. When he did not immediately turn it over, the officers twisted his arm, struck him in

the face, and applied pressure to the site of his wound, endangering his life. The case is still pending.)

viii.    *Namoca v. City of Sacramento*, Case No. 2:16-cv-02283-TLN-EFB (E.D. Cal.) (Alleging that on June 7, 2016, two police officers tackled a minor to the ground, dislocated his shoulder, and unlawfully detained him in the back of a police car for nearly an hour. The officers finally released him when they could find no legal justification to arrest him for "tampering" with a mailbox. The resulting lawsuit was settled.)

ix.    *Thompson v. City of Sacramento*, Case No. 2:18-cv-00806-KJM-DB (E.D. Cal.) (Alleging that on April 10, 2016, a police officer broke a woman's nose and orbital bones by slamming her face-first into a patrol vehicle multiple times. The resulting lawsuit was settled.)

x.    *Walker v City of Sacramento*, Case No. 2:15-cv-00656-MCE-EFB (E.D. Cal.) (Alleging that officers approached a man with their firearms drawn as he was walking from a hotel to Discovery Park. After detaining him, the officers injured the man's hands with the handcuffs, hit his head while putting him in a squad car, failed to fasten his seat belt, then injured him when they struck a concrete pillar in the police garage of the Sacramento County jail. The resulting lawsuit was settled.)

xi.    *Totton v City of Sacramento, et al.*, Case No. 2:20-cv-01152-TLN-KJN (Alleging that officers illegally stopped and detained 3 teenage boys of color when they were walking down the street. The case is still pending)

32.    The above-described policies and customs demonstrated a deliberate indifference on the part of Defendant CITY, and its policy makers, to the constitutional rights of persons, and were the cause of the violations of the K.T.'s rights as alleged herein.

33.    The CITY's policy makers were aware of, and by their inaction, condoned and facilitated an environment within the CITY in which police misconduct was tolerated and

condoned, such as the misconduct at issue in this case.

34. As a result of the above-described policies and customs, police officers from the Defendant CITY believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or disciplined, but would be tolerated.

35. The conduct of Defendant CITY in developing the aforementioned policies and customs deprived K.T. of his rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder, and each is liable to Plaintiff pursuant to 42 U.S.C § 1983.

36. As a direct and proximate result of the conduct of Defendant CITY, K.T. has suffered great mental anguish, humiliation, degradation, emotional pain and suffering, and other consequential damages, including attorneys' fees and costs.

37. WHEREFORE, the Plaintiff prays for judgment against the Defendants for compensatory damages, punitive damages, the costs of this action and attorneys fees, and any such other and further relief as this Court deems equitable and just.

**Count II - 42 USC 1983 - Fourth Amendment - Unlawful Seizure**

**Against Defendant Officers**

38. Plaintiffs restate and reallege all previous paragraphs as if already stated herein.

39. On the evening of October 10, 2020, the Defendant OFFICERS, with no reasonable suspicion that he had been involved in a crime, illegally stopped K.T.

40. The individual OFFICERS further illegally detained the minor Plaintiff without probable cause, reasonable suspicion, a warrant, or an exception thereto.

41. By means of their unlawful seizure of K.T., the individual Defendant OFFICERS deprived the minor Plaintiff of his liberty without due process of law, in violation of the Fourth and Fourteenth Amendments to the Constitutions of the United States and 42 U.S.C. 1983.

42. As a result of the illegal seizure, K.T. suffered emotional injuries including mental and emotional damage and trauma, humiliation, loss of liberty, mental distress, and anguish, and other consequential damages, including attorneys' fees and costs.

43. WHEREFORE, the Plaintiff prays for judgment against the Defendants for compensatory damages, punitive damages, the costs of this action and attorneys fees, and any such other and further relief as this Court deems equitable and just

### Count III - 42 USC 1983 - Fourth Amendment - Unlawful Search

### Against Defendant Officers

44. Plaintiffs restate and reallege all previous paragraphs as if already stated herein.

45. On the evening of October 10, 2020, the Defendant OFFICERS, with no reasonable suspicion that K.T. had committed any crime, illegally stopped, and detained him.

46. The individual OFFICERS further illegally searched the K.T. without probable cause, reasonable suspicion, a warrant, or an exception thereto.

47. By means of their unlawful search and seizure of K.T., the individual Defendant OFFICERS deprived the minor Plaintiff of his liberty without due process of law, in violation of the Fourth and Fourteenth Amendments to the Constitutions of the United States and 42 U.S.C. 1983.

48. As a result of the illegal search and seizure, K.T. suffered emotional injuries including mental and emotional damage and trauma, humiliation, loss of liberty, mental distress, and anguish, and other consequential damages, including attorneys' fees and costs.

49. WHEREFORE, the Plaintiff prays for judgment against the Defendants for compensatory damages, punitive damages, the costs of this action and attorneys fees, and any such other and further relief as this Court deems equitable and just.

### Count IV – False Imprisonment

50. Plaintiffs restate and reallege all previous paragraphs as if already stated herein.

51. Plaintiff alleges that the Defendants, without probable cause or reasonable suspicion, knowingly, wrongfully, and unlawfully detained and restrained the Plaintiff against his will through their asserted legal authority by detaining him in the back of their squad car.

52. Plaintiff believed he was not free to leave the scene. At no time during the detainment did the Defendant OFFICERS have reason to believe that Plaintiff had committed an offense.

53. As a direct and proximate result of Defendant OFFICERS' false imprisonment, Plaintiff suffered emotional injuries including mental and emotional damage and trauma, humiliation, loss of liberty, mental distress, and anguish as alleged in this Complaint.

54. WHEREFORE, the Plaintiff prays for judgment against the Defendants for compensatory damages, punitive damages, the costs of this action and attorneys fees, and any such other and further relief as this Court deems equitable and just.

## Count V – Intentional Infliction of Emotional Distress

55. Plaintiff restates and realleges all previous paragraphs as if already stated herein.

56. That at said time and place, Defendant OFFICERS acted in an extreme and outrageous manner by intentionally detaining Plaintiff without any reasonable suspicion or probable cause.

57. Defendant OFFICERS intended to inflict severe emotional distress upon Plaintiff or knew that there was a high probability that their conduct would cause him, and those around him, to suffer severe emotional distress.

58. That as a direct and proximate result of Defendant OFFICERS' acts at said time and place, Plaintiff sustained severe emotional distress, including but not limited to fear about future interaction with law enforcement.

59. WHEREFORE, the Plaintiff prays for judgment against the Defendants for compensatory damages, punitive damages, the costs of this action and attorneys fees, and any such other and further relief as this Court deems equitable and just.

### Count VII - Indemnification

### Against Defendant City

60. Plaintiff restates and realleges all previous paragraphs as if already stated herein.

61. California law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

62. The Defendant OFFICERS are or were employees of the Sacramento Police Department, who acted within the scope of their employment in committing the misconduct described herein.

63. As a direct and proximate result of Defendant OFFICERS' wrongful actions, K.T. suffered significant emotional injuries including mental and emotional damage and trauma, humiliation, loss of liberty, mental distress and anguish, and other consequential damages, including attorneys' fees and costs, as alleged in this Complaint.

64. WHEREFORE, the Plaintiff prays for judgment against the Defendants for compensatory damages, punitive damages, the costs of this action and attorneys fees, and any such other and further relief as this Court deems equitable and just.

### Conclusion

WHEREFORE, Plaintiff demands:

1. Judgment against the individual Defendant OFFICERS and the Defendant CITY, for compensatory damages in an amount to be determined at trial;

2. Judgment against each of said defendants, jointly and severally, for punitive damages in an amount to be determined at trial;

3. Judgment against all Defendants for the amount of attorney's fees and costs associated with this action; and

4. Declaratory judgment that the Defendant OFFICERS and the Defendant CITY violated the rights of K.T.

DATED: October 11, 2021

Respectfully Submitted,
/s/ Timothy Reed, Esq.
Law Office of Timothy Reed
1671 The Alameda, Suite 200
San Jose, CA 95126
669-444-1148
timothyreedesq@gmail.com
Attorney for Plaintiff